**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**MICHAEL ANTHONY JONES,**

**Plaintiff,**

**v.**                                                                        **Civil Action No. 1:15cv50**
                                                                              **(Judge Keeley)**

**UNITED STATES, et al.,**

**Defendants.**

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY
JUDGEMENT**

**I. Procedural Background**

Plaintiff initiated this *pro se* case on March 20, 2015, by filing a civil rights complaint against a number of defendants concerning his medical care at U.S.P. Hazelton. Complaint, ECF No.1.[1]  Plaintiff's initial complaint [ECF No. 11] brings suit against Defendants in their individual capacities pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). On October 1, 2015, Plaintiff filed an additional Complaint [ECF No. 62] in this same case bringing suit against the United States of America in a Federal Tort Claim.  On March 22, 2016, Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. ECF No. 92.  A Roseboro Notice was sent to Plaintiff on April 7, 2016, notifying Plaintiff of his right and obligation to file a response. ECF No. 97.  Plaintiff filed a response [ECF No. 112] and a Motion [ECF No. 114] for Summary Judgment.

---

[1] On March 27, 2015, Plaintiff refiled his complaint on the court approved form. See ECF No. 11.

Currently pending before the court are the following Motions: (1) Defendants' Motion [ECF No. 92] to Dismiss, or, in the alternative, Motion for Summary Judgment; Plaintiff's Motion [ECF No. 114] Requesting Summary Judgment; and Plaintiff's Motion [ECF No. 132] to Compel.

## II. Factual History

Plaintiff was sentenced on July 27, 2012, in the Eastern District of North Carolina to a life sentence for violating 21 U.S.C. § 846, Conspiracy to Distribute and Possession with Intent to Distribute More Than 5 Kilograms of Cocaine. ECF No. 92-2. Plaintiff is currently designated to the Federal Correctional Complex at the United States Penitentiary, Hazelton, West Virginia ("FCC Hazelton"), and has been so designated since August 28, 2012. Id.

Beginning in February 2013, Plaintiff complained, through an inmate request to staff, that his fingers were turning blue, were cold and numb, and that he was chronically short of breath. On February 21, 2013, Plaintiff was seen for these symptoms in Health Services. After speaking with Plaintiff, medical staff learned that he had seen a rheumatologist in the past and had been diagnosed with mixed connective tissue disease.[2] Therefore, following the February 21, 2013 visit, labs were ordered, and Plaintiff was prescribed prednisone for his mixed connective tissue disease as well as omeprazole for esophageal reflux. ECF No. 92-3,

---

[2] Mixed connective tissue disease has signs and symptoms of a combination of disorders — primarily lupus, scleroderma and polymyositis. Early signs and symptoms often involve the hands. Fingers might swell like sausages, and the fingertips become white and numb. In later stages, some organs — such as the lungs, heart and kidneys — may be affected.

Declaration of Dr. Gregory Mims, M.D. (Mims Decl.), ¶ 5. [3] Plaintiff followed up about a week later with Health Services with continued complaints of shortness of breath, and cold, painful, swollen hands. Based on this, he was scheduled for a consult with the clinical director, Dr. Gregory Mims, MD, which consult occurred on March 1, 2013. Id. at ¶ 6. On March 1, 2013, Dr. Mims examined Plaintiff and diagnosed him with Raynaud's syndrome (a disorder causing blood vessels to narrow, mostly in the fingers and toes), and an unspecified diffuse connective tissue disease. Dr. Mims requested x-rays of Plaintiff's chest, which were completed on March 11, 2013. The results were abnormal and showed widespread lung opacity with basilar predominance. It was unclear if the results were due to pneumonia or due to chronic interstitial lung disease.[4] Therefore, on March 13, 2013, Plaintiff was given antibiotics in case the results were in fact due to pneumonia. Id. at ¶ 7.

On April 2, 2013, another chest x-ray was taken of Plaintiff to determine whether there had been any improvement. Plaintiff's widespread lung opacity with basilar predominance was unchanged, reflecting chronic interstitial lung diagnosis. As a result, a chest CT scan and pulmonary consult request were entered into the system. The institution approved this request on April 15, 2013. On April 23, 2013, Plaintiff had a follow-up encounter with Health Services for worsening of his Raynaud's. As a result, he was prescribed Amlodipine tablets in an effort to widen the

---

[3] Medical Records filed at ECF No. 64.

[4] Interstitial lung disease describes a large group of disorders characterized by progressive scarring of the lung tissue between and supporting the air sacs. The scarring associated with interstitial lung disease may cause progressive lung stiffness, eventually affecting [one's] ability to breathe and get enough oxygen into [the] bloodstream. Interstitial lung disease may be broadly categorized into known and unknown causes. Common known causes include autoimmune or rheumatologic diseases, occupational and organic exposures, medications, and radiation.

blood vessels and improve blood flow.  Id. at ¶ 8.

In April 2013, Plaintiff was sent to Preston Memorial Hospital in Kingwood, West Virginia, for an echocardiogram. In May 2013, Plaintiff was again sent to Preston Memorial Hospital, this time for a CT scan of his chest, to be done with and without contrast. The echocardiogram was essentially normal, but the chest scan showed indications of a peripheral fibrotic disease. On June 5, 2013, Plaintiff was seen in Health Services and was prescribed an inhaler to address his shortness of breath.  Id. at ¶ 9.

On August 7, 2013, Plaintiff had another CT scan of his chest with IV contrast performed at West Virginia University (WVU) Healthcare, Department of Radiology, which showed the presence of ground-glass attenuation indicating an ongoing disease process. On November 21, 2013, a progress note from WVU referred Plaintiff to rheumatology for evaluation and treatment of the connective tissue disease. Id. at ¶ 10. On October 18, 2013, Plaintiff was sent to the Zelda Stein Weiss Cancer Center at Mon General Hospital in Morgantown, West Virginia, to rule out cancer as the cause for a 45 pound weight loss. Cancer was ruled out, and on January 6, 2014, Plaintiff underwent a CT scan of his abdomen and pelvis at Preston Memorial Hospital, with and without contrast, in a further attempt to determine the cause for the weight loss. The test revealed that Plaintiff had a collapsed colon; thus, Health Services submitted a request for a colonoscopy and a GI consult. Indeed, the colonoscopy was not completed until January 16, 2015. However, it was unremarkable but for some internal hemorrhoids. Id. at ¶ 11.

Plaintiff had another chest x-ray on February 25, 2014, as well as a CT

Thorax without contrast on May 14, 2014. On May 22, 2014, Plaintiff was seen by Dr. JoAnn Allen Hornsby, MD, at WVU Healthcare's Rheumatology Clinic and was diagnosed with lupus. Between May 2014 and January 2015, Plaintiff continued to be seen regularly in a chronic care clinic, at sick call, and was taken to outside providers as needed, to include visits to pulmonology, radiology, and gastroenterology (where he received his colonoscopy). Id. at ¶ 12.

On January 8, 2015, Plaintiff filed Administrative Tort Claim Number TRT-MXR-2015- 01934. He claimed government liability in the amount of $5,000,000.00 for personal injury at USP Hazelton.  Specifically, he alleged staff negligence in regard to his treatment of his medical diseases. The BOP conducted an investigation into Plaintiff's claims and denied his claim on April 14, 2015. Plaintiff was informed that he had six months from the date of the letter to file suit in the appropriate U.S. District Court. Plaintiff filed the present suit on March 20, 2015, which was prior to the date of BOP's denial letter for his Administrative Tort Claim.[5]  ECF No. 92-2.

### III. The Complaints

#### A. Bivens Complaint [ECF No. 11]

Plaintiff's first claim in his Biven's complaint alleges that  Defendants Dr. Mims, Nurse Hamilton, and Dr. Lafluer acted with deliberate indifference to serious medical needs causing or contributing to unreasonable delayed medical care and wanton infliction of pain and suffering in violation of the Eighth Amendment.  ECF No. 11 at 9. Plaintiff's second claim alleges that Defendants Director Samuels, Director Caraway,

---

[5] Technically, therefore, Plaintiff filed his FTCA claim prematurely without first exhausting his administrative remedy.  However, Defendants did not raise this procedural error as a defense, and in light of the undersigned's recommendation with respect to said claim, this procedural error is of no consequence.

Warden O'Brien, and Assistant Warden Odem acted with deliberate indifference to serious medical needs under "supervisor liability" causing or contributing to unreasonable delayed medical care and wanton infliction of pain and suffering in violation of the Eighth Amendment. Id. at 14. Plaintiff's third claim in his Biven's complaint alleges that Defendants, United States of America and the Bureau of Prisons, violated the ADA by and through its employees inasmuch as he is a qualified person and was excluded from service of a public entity. Id. at 24. More specifically, Plaintiff alleges that Defendants failed to issue and provide requested tests and studies to specialists for proper treatment and no alternative adequate medical care was given as "reasonable accommodations" for nearly (15) months in violation of ADA.[6] Id.

## B. **FTCA Tort Complaint [ECF No. 62]**

Plaintiff's FTCA Complaint alleges federal employees at FCI Hazelton deliberately failed to provide timely tests and studies for specialist treatment over an unreasonable time period of nearly (22) months without providing alternative equal and adequate care. FTCA Complaint, ECF. No 62 at 11.

Plaintiff's second claim alleges that from November 21, 2013, to present, employees for the FBOP Agency namely, Director Charles E. Samuels, Regional Director

---

[4]The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). A public entity is defined as "(A) any State or local government; (B) any department agency, special purpose district, or other instrumentality of a State or local government; and (C) the National Railway Passenger Corporation, and any community authority (as defined in section 502(8) of Title 45)." 42 U.S.C. § 12131(1); United States v. Wishart, 146 F. App'x 171, 173 (9th Cir. 2005). Therefore, by definition the ADA does not apply to the federal government, federal employees or private individuals. It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional facilities. See Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). However, it does apply to prisoners confined in federal facilities.

J.F. Caraway, Warden Terry O'Brien, and Associate Warden William Odom, did with negligence, reckless disregard for health and safety, abuse of process and breach of duty of care caused or contributed to unreasonable delay and inadequate medical care by and through negligent supervision of its employees. Id. at 14. Plaintiff alleges that the supervisors had knowledge of the delayed and inadequate medical care by reports and appeals. Id. In addition, Plaintiff asserts that Policy Statement 6031.04, which permits the clinical director to disregard a specialist recommendation, allowed the delay in treatment creating a substantial risk of harm and injury. Id. at 16.

## IV. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### B. Motion for Summary Judgment

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  Id. at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, at 587 (citation omitted).

Plaintiff is proceeding *pro se* and therefore, the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (*per curiam*); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leake, 574 Fed 2nd 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520 – 21. The mandated liberal construction means only that of the court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so. Barnett v. Hargett, 174 Fed 3rd 1128 (10th Cir. 1999). However, a court may not construct plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

**IV.   Analysis**

**A.  Bivens Complaint [ECF No. 11]**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994).   In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).   "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. at 837.

**1.     Defendants United States of America and Bureau of Prisons should be dismissed.**

A <u>Bivens</u> cause of action is only available against federal officers in their individual capacities, and not the federal agency which employs the persons acting under federal law.  <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-86 (1994) (refusing to find a <u>Bivens</u> remedy against a federal agency); <u>see</u> <u>also</u> <u>Randall v. United States</u>, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under <u>Bivens</u> is against federal officials individually, not the federal government.").  Thus, Plaintiff's <u>Bivens</u> claims against the United States of America and the BOP should be dismissed.

**2.     Defendants Bureau of Prisons Director Charles E. Samuels; Regional Director J.F. Caraway; Warden Terry O'Brien; and Associate Warden William Odom should be dismissed.**

Liability in a <u>Bivens</u> case is "personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted).  Therefore, in order to establish liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. <u>See</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986).  *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case.  <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).  Because vicarious liability is inapplicable to <u>Bivens</u> and Section 1983 suits, a plaintiff must plead that each government-official, through the

official's own individual actions, has violated the Constitution. <u>Ashcraft v. Iqbal</u>, 556 U.S. 662 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own conduct." <u>Id.</u> at 1948-49.

With respect to Director Charles E. Samuels, Director J.F. Caraway, Warden Terry O'Brien and Associate Warden William Odem, Plaintiff asserts no personal involvement on the part of any of those defendants in the alleged violations of his constitutional rights. Instead, Plaintiff merely asserts that those persons had supervisory authority over the alleged violators and that they should have done something to prevent the alleged violations of his rights. In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a <u>Bivens</u> action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." <u>Id.</u> However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. <u>Id.</u> Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. <u>Id.</u>

In this case, Plaintiff has not provided any evidence that these Defendants

tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Instead, it appears that those defendants simply failed to grant Plaintiff relief during the administrative process. However, an administrator's participation in the administrative remedy process is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Accordingly, Plaintiff cannot maintain a Bivens claim against Bureau of Prisons Director Charles E. Samuels; Regional Director J.F. Caraway; Warden Terry O'Brien; and Associate Warden William Odom. Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Thus, even assuming these supervisory defendants had notice of Plaintiff's administrative grievance regarding his medical needs, it does not rise to the level of personal involvement for liability in this suit. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Dunn v. Stewart, 2012 WL 6963923, *5 (N.D.W.Va. 2012); Sanders v. O'Brien, 2011 WL 2972089, *10 (N.D.W.Va. 2011); DeBerry v. Gilmer, 2010 WL 3937956, *6 (N.D.W.Va. 2010). Accordingly, these supervisory defendants should be dismissed.

### 3. Defendants Dr. Gregory Mims; Registered Nurse Jamie Hamilton-Rumer; and Dr. Christopher LaFleur should be dismissed.

In asserting his Bivens claim, Plaintiff alleges Dr. Gregory Mims, Registered Nurse Jamie Hamilton-Rumer, and Dr. Christopher LaFleur, violated his constitutional rights when they were deliberately indifferent to his serious medical needs. ECF No. 11.

Title 42 U.S.C. § 233(a) makes the FTCA the exclusive remedy for specified actions against members of the Public Health Service ("PHS"). In particular, it protects

commissioned officers or employees of the PHS from liability for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by requiring that such lawsuits be brought against the United States instead. The United States thus, in effect, insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties. Cuoco v. Moritsugu, 222 F.3d 99, 109 (2nd Cir. 2000). See also, US v. Smith, 499 U.S. 160, 170  n. 11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C.§ 223(a) that the FTCA is a plaintiff's sole remedy against PHS employees); Apple v. Jewish Hospital and Medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (Motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), Congress made proceedings under the FTCA the sole avenue to seek relief against any PHS employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The Supreme Court confirmed this rule in Hui v. Castaneda, by specifically holding that the immunity provided by §233(a) precludes a Bivens action against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their  office or employment. Hui, 559 U.S. 799, 802 (2010).

During the time period relevant to Plaintiff's Complaint, Defendant Dr.

Gregory Mims was the Clinical Director at the Federal Corrections Complex, Hazelton, West Virginia ("FCC Hazelton") and a PHS employee. ECF No. 92-3. Defendant Jamie Hamilton-Rumer, was a Registered Nurse at FCC Hazelton as well as a PHS employee. ECF No. 92-4. Finally, Defendant Dr. Christopher LaFleur, was a Pharmacist at FCC Hazelton and also a PHS employee. Id. Thus, pursuant to 42 U.S.C. § 233(a), Defendants Mims, Hamilton-Rumer, and LaFleur are entitled to absolute immunity from suit for all claims arising from the medical care each provided to Plaintiff, and should be dismissed from the Bivens portion of Plaintiff's lawsuit.

**4.** **Defendant's Claim of Deliberate Indifference fails and should be dismissed**

Plaintiff alleges that all defendants were deliberately indifferent to his serious medical needs and thus, violated his Eighth Amendment rights. See Complaint, ECF No.11. Even if Plaintiff had named a Defendant, who was not employee of the PHS in his complaint, he still would not state a claim for relief.

To demonstrate that a prison official violated the Eighth Amendment by denying medical care, an inmate must show (1) that the deprivation alleged was objectively "sufficiently serious" and (2) that the prison official was "deliberately indifferent" to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). With respect to the first element, a medical condition is sufficiently serious if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). As to the second element, a prison official cannot be found to be deliberately indifferent to an inmate's health or safety unless the

official knows of and disregards an excessive risk to inmate health or safety.  Farmer, 511 U.S. at 837.    This standard is a higher standard for culpability than mere negligence or even civil recklessness, and because of this, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.  Jackson, 775 F.3d at 178.    If a prison official does have knowledge of a substantial risk to inmate health or safety, he or she may still be free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 511 U.S. at 844.  On the other hand, a doctor's failure to provide care that he himself deems necessary to treat an inmate's serious medical condition may constitute  deliberate indifference.    Jackson, 775 F.3d at 179 (citing Miltier v. Boern, 896 F.2d 848, 853 (4th Cir.1990) (overruled on other grounds)).

It is undisputed that Plaintiff's chronic medical conditions of lupus and mixed connective tissue disease are sufficiently serious. However, Plaintiff fails to show that Defendants were deliberately indifferent to his serious medical needs. Plaintiff's conditions have no cure, and Defendants consistently monitored and evaluated him for ways to effectively manage his symptoms and alleviate his discomfort. Medical staff examined Plaintiff at numerous health service and sick call appointments and provided him with outside specialized medical care, including visits to specialists in radiology, rheumatology, pulmonology, oncology, hematology, cardiology, and gastroenterology. Plaintiff has been prescribed multiple medications to manage his conditions.  See ECF No. 92-3, Mims Decl., ¶ 13; see also Farmer, 511 U.S. at 844.  Moreover, as noted in Jackson v. Lightsey, a disagreement between an inmate and a physician over the inmate's proper medical care falls short of showing deliberate indifference.  Id.  775

F.3d at 178. When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F.Supp. 542, 547 (M.D.Pa. 1988). See Robinson v. United States, 2010 WL 1254277, *14 (M.D. Pa. 2010)(the court held that an inmate who suffered from discoid lupus, prostate cancer, and hepatitis, received both treatment and medication for his medical conditions and thus could not support an Eighth Amendment claim against prison officials). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the undersigned concluded that the Plaintiff received "bad care," which he does not, he did receive care. Therefore, for the foregoing reasons, Defendants were not deliberately indifferent to Plaintiff's serious medical needs, and thus, did not violate his Eighth Amendment rights.

### B. FTCA Tort Complaint [ECF No. 62]

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provision of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

The Supreme Court has held that "a person can sue under the Federal Tort

Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). However, the FTCA does not create a new cause of action. Edina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements generally must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care at issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See <u>Stanley v. United States</u>, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).

Plaintiff alleges that federal employees at FCI Hazelton acted with medical negligence in failing to provide timely medical testing and treatment. ECF No. 62. Specifically, Plaintiff alleges that Defendants failed to provide tests and studies timely for specialist treatment over an unreasonable time period. <u>Id.</u> He asserts that the delay in treatment caused is chronic conditions to worsen. <u>Id.</u> In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because he failed properly file a screening certificate of merit pursuant to the MPLA. ECF 92 at 13. In Response, Plaintiff argues that the medical records support the claim for medical negligence without an expert.[7]

---

[7] To the extent that Plaintiff argues that the undersigned waived the necessity of a screening

In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va.2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.[8]

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. <u>See</u> <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that prior to November 21, 2013, the medical staff at FCI Hazelton evaluated and provided treatment for Plaintiff's mixed connective tissue disease, Raynaud's Syndrome, Chronic interstitial lung disease, peripheral fibrotic disease and esophageal reflux. ECF No. 92-3, Declaration of Dr. Gregory Mims,

---

certificate in the Order to Answer, he is incorrect. First, the undersigned does not have that authority. Second, the undersigned simply was unwilling to recommend dismissal at that stage without the opportunity to view more of Plaintiff's medical records and history.

[8] <u>Johnson</u> is a rare exception to "the general rule that in medical practice cases negligence or want of professional skill can be proved only by expert witnesses." <u>See</u> <u>Banfi v. Am. Hosp. for Rehab</u>, 529 S.E.2d 600, 605 (W.Va. 2000). A court shall require expert testimony except where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience…" <u>Id.</u>at 605-606.

M.D. (Mims Decl.), ¶ 5.   On November 21, 2013, a progress note from WVU referred Plaintiff to rheumatology for evaluation and treatment of the connective tissue disease.[9]   Plaintiff complains that results from a test taken on January 4, 2014, revealed that the Plaintiff had a collapsed colon; thus, Health Services submitted a request for a colonoscopy and a GI consult, which were not completed until January 16, 2015. However, the colonoscopy and GI were unremarkable but for some internal hemorrhoids. Id. at ¶ 11.

Plaintiff, however, contends that medical staff provided untimely and inadequate medical treatment, which resulted in "irreparable injuries to his lungs", aggravated injuries of lupus, ILD, Raynaud's, connective tissue disease, and  mental pain and suffering in the amount of five million dollars. ECF No. 62 at 21-24.  Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCI Hazelton fell below the applicable standard of care. The undersigned finds that the symptoms, methods of prevention, and proper treatment options for these numerous diseases, are not within the understanding of lay jurors by resort to common knowledge and experience. Further neither is the alleged causal connection in the delay of the testing and the injuries alleged.   Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55–7B–6(c) and his FTCA complaint should be dismissed.

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the

_____

[9] On October 18, 2013, the Plaintiff was sent to the Zelda Stein Weiss Cancer Center at Mon General Hospital in Morgantown, West Virginia, to rule out cancer as the cause for a 45 pound weight loss. Cancer was ruled out, and on January 6, 2014, the Plaintiff underwent a CT scan of his abdomen and pelvis at Preston Memorial Hospital, with and without contrast, in a further attempt to determine the cause for the weight loss. ECF No. 92-3, Declaration of Dr. Gregory Mims, M.D. (Mims Decl.).

Government's Motion **[ECF No. 92] to Dismiss** be **GRANTED**; **Plaintiff's Motion [ECF No. 114] for Summary Judgment** be **DENIED**; and **Plaintiff's Motion [ECF No. 132] to Compel** be **DENIED** as **MOOT.** The undersigned further **RECOMMENDS** Plaintiff's <u>Bivens'</u> complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, and Plaintiff's FTCA complaint be **DISMISSED WITHOUT PREJUDICE** for failure to comply with the MPLA.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those  portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right  to  appeal  from  a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Ar</u>n, 474 U.S. 140 (1985); <u>Wright v. C</u>ollins, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means.

DATED: November 17, 2016.

*/s Robert W. Trumble*

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE